UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
JAMES P. BEECHINOR                    )        CIVIL ACTION NO.
    Plaintiff                          )
                                      )
                                      )        JURY TRIAL DEMANDED
v.                                    )
                                      )
ALFANO AUTO GROUP, LLC D/B/A          )
ALFANO NISSAN                         )
    Defendant                          )
_____)      JULY 31, 2015

## COMPLAINT

### I.  INTRODUCTION

1.      This is a suit brought by a consumer under the Consumer Leasing Act ("CLA"), 15 U.S.C. § 1667 *et seq.*, the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.,* and the Credit Repair Organization Act ("CROA"), 15 U.S.C. § 1679 *et seq.*, against defendant Alfano Auto Group, LLC d/b/a Alfano Nissan ("Alfano").  Plaintiff also asserts pendent state law claims for violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq.*

### II.  PARTIES

2.      Plaintiff, James P. Beechinor, is a natural person residing in Torrington, Connecticut.

3.      Alfano is a Connecticut limited liability company that operates a motor vehicle dealership in Torrington, Connecticut.

### III.  JURISDICTION

4.      Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331.

5.     This Court has jurisdiction over Alfano because it is located in Connecticut and regularly does business in Connecticut.

6.     Venue in this Court is proper, because the transaction alleged herein occurred in this state.

## IV.  FACTUAL ALLEGATIONS

7.     On or about September 13, 2014, Plaintiff visited Alfano for the purpose of purchasing a motor vehicle.  Alfano showed Plaintiff a new 2014 Nissan Altima, VIN# 1N4AL3AP4EC122980 (the "#2980 Vehicle").

8.     Prior to the time that Alfano showed Plaintiff the #2980 Vehicle, it had removed the vehicle's Monroney Sticker in violation of 15 U.S.C. § 1233(c).

9.     Plaintiff believes, and on that basis alleges, that the manufacturer's suggested retail price ("MSRP") of the #2980 Vehicle was approximately $22-$23,000.

10.     Alfano told Plaintiff that the cash price of the #2980 Vehicle was approximately $22-$23,000.

11.     Plaintiff agreed to lease the #2980 Vehicle, and Alfano prepared a Motor Vehicle Lease Agreement ("First Lease Agreement") listing Alfano Nissan as the Lessor and Plaintiff as Lessee.

12.     The First Lease Agreement identified the #2980 Vehicle as a "New" vehicle and listed an agreed-upon value of $31,000, which value was incorporated into the Gross Capitalized Cost of $35,542.00.

13.     Additionally, the First Lease Agreement recited an initial cash payment of $804.68, even though Plaintiff did not pay any cash to Alfano and was not requested to make any initial cash payment.

14.     Alfano told Plaintiff that in order for him to be approved for the First Lease Agreement, he had to purchase a service contract at a cost of $3,448.00.

15.     Plaintiff did not request or desire the service contract, and he requested that Alfano remove it from the First Lease Agreement, but Alfano refused.

16.     Plaintiff also expressed concern regarding whether he could afford the monthly payment of $527.60, and Alfano told Plaintiff that he could return to Alfano in six months and lower the monthly payment.

17.     Plaintiff agreed to proceed with the First Lease Agreement and agreed to execute the agreement.

18.     Due to weather conditions, Plaintiff was unable to closely inspect the #2980 Vehicle's exterior prior to taking delivery.

19.     The First Lease Agreement was assigned to Nissan-Infiniti LT.

20.     The next morning, Plaintiff discovered that the #2980 Vehicle had extensive damage, including dents on the vehicle's hood, roof and trunk, which he had been unable to see prior to taking delivery due to adverse weather conditions.

21.     The damage to the Vehicle was such that it could not legally be sold or leased as a new vehicle without disclosure of the damage.

22.     Upon discovering the prior damage the following day, Plaintiff immediately brought the #2980 Vehicle back to Alfano.

23.     Alfano agreed to provide Plaintiff with a replacement vehicle and gave Plaintiff a loaner vehicle until one could be located.

24.     Approximately two weeks later, Plaintiff returned to Alfano and Alfano gave him a similarly equipped 2014 Nissan Altima, VIN # 1N4AL3AP4EN376547 (the "#6547 Vehicle").

25.     Plaintiff did not sign a new lease agreement for the #6547 Vehicle, and he continued to make the monthly payments listed in the First Lease Agreement.

26.     On or about March 18, 2015, Plaintiff returned to Alfano to inquire about reducing his monthly payment.

27.     Alfano prepared a Retail Installment Contract (the "Contract') for the purchase of the #6547 Vehicle.

28.     The Contract identified the #6547 Vehicle as "New", even though Plaintiff had been driving it for six months, and listed a cash price of $32,365.63, and showed a cash down payment of $4,500.

29.     Plaintiff did not pay a down payment of $4,500.

## V.  CAUSES OF ACTION

### A.  CONSUMER LEASING ACT – #2980 Vehicle

30.     Alfano violated the CLA by falsely disclosing an initial cash payment of $804.68.

31.     Alfano further violated the CLA when it required Plaintiff to purchase a service contract as a condition of obtaining the lease.

32.     For its CLA violations, Alfano is liable to Plaintiff for actual damages plus additional damages of $2,000, plus attorney's fees and costs.

## B.  CONSUMER LEASING ACT – #6547 VEHICLE

33.     Alfano violated the CLA when it failed to provide Plaintiff with a new Lease Agreement for the lease of the #6547 Vehicle, in that the prior lease did not qualify because it did not describe the leased property as required by 15 U.S.C. § 1667(a).

34.     For its CLA violations, Alfano is liable to Plaintiff for actual damages plus an additional $2,000, plus attorney's fees and costs, pursuant to 15 U.S.C. §1640(a).

## C.  CREDIT REPAIR ORGANIZATION ACT – #2980 VEHICLE

35.     Alfano violated the CROA when it listed the #2980 Vehicle as "New" on the First Lease Agreement, when the damage to the Vehicle was such that it could not legally be sold or leased as a new vehicle without disclosure of the damage.

36.     Alfano also violated the CROA when it falsely stated that Plaintiff was making an initial cash payment.

37.     For its CROA violations, Alfano is liable to Plaintiff for actual damages, punitive damages, and reasonable attorney fees under 15 U.S.C. § 1679g(a).

## D.  CREDIT REPAIR ORGANIZATION ACT – #6547 VEHICLE

38.     Alfano violated the CROA when it listed the #6547 Vehicle as "New" on the Contract for the purchase of the #6547 Vehicle and when it falsely listed a down payment for the Vehicle.

39.     For its CROA violations, Alfano is liable to Plaintiff for actual damages, punitive damages, and reasonable attorney fees under 15 U.S.C. § 1679g(a).

## E.  TRUTH IN LENDING ACT – #6547 VEHICLE

40.     Alfano violated TILA because it listed a false down payment of $4,500 on the Contract.

5

41.     Although the Contract reflected a stated cash price of $32,365.63, the effective cash price of the Vehicle, once the false down payment is subtracted, was only $27,865.63, plus whatever balance of the service contract may have been applied to the purchase.

42.     The sales tax in the transaction was calculated based upon the stated cash price of $32,365.63, resulting in a higher sales tax charge.

43.     Alfano failed to disclose the additional sales tax as a "finance charge" and provided an inaccurate itemization of the amount financed.

44.     For Alfano's TILA violations, it is liable to Plaintiff for actual damages and attorney's fees.

### F.  CONNECTICUT UNFAIR TRADE PRACTICES ACT – #2980 Vehicle

45.     Alfano violated CUTPA by removing the Monroney Sticker from the #2980 Vehicle.

46.     Alfano further violated CUTPA by utilizing a cash price in the lease that was substantially in excess of the MSRP as shown on the Monroney sticker and by charging the Plaintiff considerably more than the price that it had communicated to Plaintiff.

47.     Alfano further violated CUTPA by its failure to disclose the damage to the #2980 Vehicle and by leasing it as a "new" vehicle despite the prior damage.

48.     Alfano further violated CUTPA by its false and deceptive statement that Plaintiff was required to purchase a service contract as a condition of the Vehicle, which service contract provided little value because the manufacturer's warranty would cover most defects that might occur during the period of the Lease.

49.     Alfano's conduct, as aforedescribed, was unfair and deceptive and in violation of CUTPA, and it has caused Plaintiff to suffer ascertainable losses and damages.

50.     Alfano is liable to Plaintiff for his damages, punitive damages and attorney's fees.

### G.  CONNECTICUT UNFAIR TRADE PRACTICES ACT – #6547 Vehicle

51.     Alfano violated CUTPA by including a false down payment of $4,500 on the Contract.

52.     Although some of that down payment may have been attributable to a refund following the cancellation of the service contract, much of it was not.

53.     Alfano's conduct, as described above, was unfair and deceptive in violation of CUTPA, and it has caused Plaintiff to suffer ascertainable losses and damages.

54.     Alfano is liable to Plaintiff for his damages, punitive damages and attorney's fees.

WHEREFORE, Plaintiff claims actual damages, statutory damages of $2,000 for each lease agreement, and attorney's fees and costs pursuant to the CLA; actual damages, punitive damages and reasonable attorney's fees pursuant to the CROA; damages, statutory damages under TILA; and actual damage, statutory punitive damages and attorney's fees pursuant to CUTPA.

PLAINTIFF, JAMES P. BEECHINOR

By: /s/ Daniel S. Blinn
     Daniel S. Blinn (ct02188)
     dblinn@consumerlawgroup.com
     Consumer Law Group, LLC
     35 Cold Spring Rd. Suite 512
     Rocky Hill, CT  06067
     Tel.  (860) 571-0408
     Fax. (860) 571-7457